Filed 10/29/15  Save the American River Assoc. v. City of Folsom CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| SAVE THE AMERICAN RIVER ASSOCIATION, | C076808 |
| Plaintiff and Appellant, | (Super. Ct. No. 34-2013-80001560CUWMGDS) |
| v. | |
| CITY OF FOLSOM et al., | |
| Defendants and Respondents; | |
| DEPARTMENT OF PARKS AND RECREATION, | |
| Real Party in Interest and Respondent. | |

In this CEQA[1] case, plaintiff Save the American River Association (SARA) contends defendant City of Folsom (the city) prejudicially abused its discretion by failing

---

[1] CEQA is the California Environmental Quality Act (Pub. Res. Code, § 21000, et seq.).

1

to prepare an environmental impact report (EIR) for the Lake Natoma Waterfront and Trail Access Enhancement Project (the project) because substantial evidence supports a fair argument that the project is inconsistent with the Folsom Lake State Recreation Area & Folsom Powerhouse State Historic Park General Plan/Resource Management Plan (the general plan) and the American River Parkway Plan (the parkway plan).  Even though the threshold set by the fair argument standard is low, on the record here we conclude that SARA has not shown the existence of any substantial evidence giving rise to a fair argument that the project is inconsistent with either plan.  Accordingly, we will affirm the judgment denying SARA's petition for a writ of mandate.

FACTUAL AND PROCEDURAL BACKGROUND

The area of the proposed project is in historic downtown Folsom, along the shore of Lake Natoma, on both sides of the Lake Natoma crossing bridge.  The project involves the development of "a dedicated ADA [Americans with Disabilities Act] accessible pedestrian waterfront trail . . . using existing paved and unpaved trail alignments."  The project will "enhance existing pedestrian pathways by improving trail access to Lake Natoma, paving existing unpaved trails providing pathway stabilization, creating new scenic rest areas and overlooks for visitors, and providing direct landing access for kayaks and other small, non-motorized vessels."  The project will also include "remov[al of] various invasive species and re-establish[ment of] native plant and tree communities" and "stabilization of existing unsupported banks and unpaved trails."

In May 2012, the city issued notice of its intent to adopt a mitigated negative declaration for the project.  SARA submitted comments, asserting (among other things) that the project was inconsistent with the general plan and the parkway plan.[2]  In May

---

[2]      Relevant details of the two plans are provided in the Discussion section.

2

2013, the city adopted the mitigated negative declaration, then approved the project in June 2013.

SARA filed its petition for a writ of mandate in July 2013. Following a hearing in February 2014, the trial court issued its order denying the petition in May 2014, concluding that the project was consistent with both plans. This timely appeal followed.

DISCUSSION

On appeal, SARA contends the city's approval of the project violated CEQA because substantial evidence supports a fair argument that the project may have a significant environmental impact because the project violates both the general plan and the parkway plan.**3** We conclude that SARA has identified no such evidence.

I

*Governing Legal Principles*

The following principles apply here:

" 'With certain limited exceptions, a public agency must prepare an EIR whenever substantial evidence supports a fair argument that a proposed project "may have a significant effect on the environment." [Citations.] " 'Significant effect on the environment' means a substantial, or potentially substantial, adverse change in the environment." [Citations.]' [Citation.]

---

**3** SARA also contends the city prejudicially abused its discretion by approving a project that was inconsistent with applicable land use plans. This argument, however, merely incorporates the substance of SARA's other argument. Thus, our discussion of SARA's first argument is sufficient to dispose of the entire appeal.

"If there is substantial evidence in the whole record supporting a fair argument that a project may have a significant nonmitigable effect on the environment, the lead agency shall prepare an EIR, even though it may also be presented with other substantial evidence that the project will not have a significant effect. [Citations.] 'May' means a reasonable possibility. [Citations.]

" 'Substantial evidence' means 'enough relevant information and reasonable inferences from this information that a fair argument can be made to support a conclusion, even though other conclusions might also be reached.' [Citation.] Substantial evidence 'shall include facts, reasonable assumptions predicated upon facts, and expert opinion supported by facts.' [Citation.] 'Argument, speculation, unsubstantiated opinion or narrative, evidence which is clearly erroneous or inaccurate, or evidence of social or economic impacts which do not contribute to or are not caused by physical impacts on the environment does not constitute substantial evidence.' [Citation.]

"The fair argument standard is a 'low threshold' test for requiring the preparation of an EIR. [Citations.] It is a question of law, not fact, whether a fair argument exists, and the courts owe no deference to the lead agency's determination. Review is de novo, with a preference for resolving doubts in favor of environmental review." (*Pocket Protectors v. City of Sacramento* (2004) 124 Cal.App.4th 903, 927-928.)

In addition to the foregoing general principles, the following specific principle from *Pocket Protectors* governs our inquiry here: If a land use plan, policy, or regulation applicable to the project area was adopted at least in part for the purpose of avoiding or mitigating an environmental effect, then preparation of an EIR is required if substantial evidence in the record supports a fair argument that the proposed project conflicts with that plan, policy, or regulation. (*Pocket Protectors v. City of Sacramento*, *supra*, 124 Cal.App.4th at pp. 929-930, 934.) Just as with any other application of the fair argument standard, "[w]hether a fair argument can be made on this point is a legal question on

4

which we do not defer to the [agency's] determination.  [Citation.]  Furthermore, if substantial evidence supports the existence of a fair argument, the existence of contrary evidence does not excuse a lead agency from its duty to prepare an EIR."  (*Id.* at pp. 930-931.)

## II

*SARA Fails To Identify Any Substantial Evidence Supporting A Fair Argument*

*That The Project Conflicts With The General Plan Or The Parkway Plan*

The first question under *Pocket Protectors* is whether the general plan and the parkway plan were adopted, at least in part, for the purpose of avoiding or mitigating an environmental effect.  SARA contends they were, asserting that both plans "were adopted for the purpose of avoiding or mitigating the environmental effects of development and use of the Lake Natoma Area of the American River Parkway."  The city does not contend otherwise.  We agree with SARA on this point.

The general plan explains that "[a] park general plan is the primary management document for a unit of the State Parks system, establishing its purpose and management direction for the future.  By providing a defined purpose and vision, long-term goals, and guidelines, the general plan defines the broadest management framework for the development, ongoing management, and public use of a park.  This framework will guide the day-to-day decision-making for the park, and serve as the basis for developing focused management plans, specific project plans, and other management actions necessary to implement the goals of the general plan."  By law, a general plan for a state park must "consist of elements that will evaluate and define the proposed land uses, facilities, concessions, operation of the unit, any environmental impacts, and the management of resources, and shall serve as a guide for the future development,

management, and operation of the unit." (Pub. Res. Code,[4] § 5002.2, subd. (a).) "The resource element of the general plan shall evaluate the unit as a constituent of an ecological region and as a distinct ecological entity, based upon historical and ecological research of plant-animal and soil-geological relationships and shall contain a declaration of purpose, setting forth specific long-range management objectives for the unit consistent with the unit's classification pursuant to Article 1.7 (commencing with Section 5019.50), and a declaration of resource management policy, setting forth the precise actions and limitations required for the achievement of the objectives established in the declaration of purpose." (§ 5002.2, subd. (b).) For the purposes of CEQA, "[t]he general plan constitutes a report on a project." (*Id.*, subd. (a).)

The parkway plan "means the revised, updated management plans for the lower American River adopted by the County of Sacramento on September 10, 2008, by Resolution No. 2008-0946, and by the City of Sacramento on November 6, 2008, by Resolution No. 2008-731, and endorsed by the City of Rancho Cordova on September 15, 2008, by Resolution No. 110-2008." (§ 5841, subd. (a).) The California Legislature expressly "adopt[ed] the American River Parkway Plan so as to provide coordination with local agencies in the protection and management of the diverse and valuable natural land, water, native wildlife, and vegetation of the American River Parkway." (§ 5842, subd. (a).) The Legislature further mandated that "[a]ctions of state and local agencies with regard to land use decisions shall be consistent with the American River Parkway Plan." (*Ibid.*, subd. (b).)

In light of the foregoing, we agree with SARA that both the general plan and the parkway plan were adopted at least in part for the purpose of avoiding or mitigating environmental effects stemming from the use and development of land with the Folsom

---

[4] All further undesignated section references are to the Public Resources Code.

Lake State Recreation Area and the American River Parkway, which includes the area of the project at issue here. Accordingly, the next question under *Pocket Protectors* is whether substantial evidence in the record supports a fair argument that the project conflicts with either or both of those plans. We conclude that SARA has not identified any such evidence.

We begin with the general plan. That plan divides the Folsom Lake State Recreation Area into 34 management zones, each of which is assigned one of four land use designations: recreation; low intensity recreation/conservation; preservation; and administration. The project area falls within the Natoma North Shore management zone, which the general plan assigns the land use designation low intensity recreation/conservation.

The low intensity recreation/conservation land use designation is generally defined as follows: "Areas whose natural and cultural resource values will be protected and restored while accommodating lower intensity recreation and interpretation that is compatible with and dependent on the resource values. Recreation use and facilities occur in these areas, however the level of use is generally lower intensity than recreation areas. While some developed facilities are located in these areas, there tend to be fewer and less developed facilities than in recreation areas and direct vehicle access may not always exist. Recreation use and facilities, while present, do not dominate these areas. These areas offer opportunities for more challenging recreational activities in a natural setting. Resource management in low intensity recreation/conservation areas emphasizes protecting and restoring natural processes with only minor modification of non-sensitive resources permitted to accommodate additional visitor use as appropriate."

In contrast, the general plan assigns the following general definition to the recreation land use designation: "Areas that can accommodate more intensive recreational use in a developed and structured setting. These areas accommodate the highest levels of visitor use in the [State Recreation Area], provide easy access to a full

7

range of recreational and interpretive activities and facilities, and are of a sufficient size to locate the parking, utilities, and infrastructure needed to support the visitor use. The focus of resource management in these areas is to minimize or avoid additional impact to resources and to restore resource values where appropriate. The Recreation designation is further classified by intensity of use. High Intensity Recreation represents the most extensively-developed areas in the [State Recreation Area] and the major gateways for visitors, such as Granite Bay, Beals Point, Brown's Ravine, and Nimbus Flat. Medium Intensity Recreation areas are somewhat less developed and offer fewer facilities, although these areas remain significant visitor gateways. Medium intensity recreation areas in the [State Recreation Area] include Rattlesnake Bar, Folsom Point, and Negro Bar."

SARA's argument is that "by [the] construction of paved trails, [a] paved stairway, and non-motorized boating facilities, and by making the area ADA accessible," the "execution of the Project will result in the Project Area effectively changing from its Low Intensity [Recreation]/Conservation designation to a Medium Intensity [Recreation] designation." According to SARA, "[i]n order to increase visitor use [of the project area], the Project . . . converts the current recreational experience from a mostly natural setting to a developed structured setting, providing more developed facilities that do not retain the natural features of the area and which will dominate the area." In SARA's view, "[t]his is inconsistent with [the] General Plan[']s contemplated 'slight modification and management of non-sensitive natural and cultural resources as necessary to support moderate to low-intensity visitor use with natural features retained as necessary to reflect mostly-natural setting' " for areas designated low intensity recreation/conservation.

The primary flaw in this argument is that SARA fails to support it with citations to *substantial evidence in the record*. Thus, SARA does not cite any substantial evidence that the modifications proposed to make access to Lake Natoma at the project site ADA accessible constitute more than slight or minor modifications necessary to support

moderate to low-intensity visitor use, nor does SARA point to any substantial evidence that the proposed modifications will change the project area "from a mostly natural setting to a developed structural setting" overall. Certainly a paved path is more developed, and less natural, than an unpaved path, but SARA does not point to any substantial evidence that the scope of the project is such that, overall, the project's more developed attributes will dominate the otherwise mostly natural setting of the project area. Moreover, it is important to note that the low intensity recreation/conservation designation does not forbid all development. This land use designation allows for "[b]oardwalks, overlooks, [and] pedestrian paths . . . as needed to . . . provide accessibility" and specifically allows for the provision of "ADA access depending on potential natural/cultural resource impacts and economic feasibility." Here, SARA fails to cite to any substantial evidence that the potential natural resource impacts of providing ADA access to Lake Natoma in this area in the way this project will do would be so significant that a fair argument can be made that the project will render the project area inconsistent with the low intensity recreation/conservation designation.

What SARA cites for evidence in support of its argument is the supposed *intent* behind the project, which, according to SARA, is "so that Folsom can realize an economic benefit to the Folsom Historic District which is adjacent to the Project Area." In SARA's view, apparently, because the city's "intent [in building the project is] to increase access and intensity of use in the Project Area" in order to realize an economic benefit, it necessarily follows that there may be increased use of sufficient magnitude that it will effectively change the project area from one appropriately assigned to the low intensity recreation/conservation designation to one more appropriately assigned the recreation - medium intensity. While increased use of the area is certainly the goal of the project -- whatever the reason for seeking that increase -- SARA still fails to identify any *substantial evidence* supporting a fair argument that the project may result in so much increased usage that it will effectively alter the appropriate land use designation of the

9

project area.  Among other things, SARA does not point to any expert analysis, or even any "[r]elevant personal observations of area residents" on the subject.  (*Pocket Protectors v. City of Sacramento*, *supra*, 124 Cal.App.4th at p. 928.)  Instead, what SARA relies on amounts to nothing more than "mere argument, speculation, and unsubstantiated opinion," none of which "is . . . substantial evidence for a fair argument." (*Ibid.*)

SARA's argument under the parkway plan fares no better than its argument under the general plan.  First, to the extent the parkway plan adopts the general plan by reference and relies on that plan "to derive its management direction for the Natoma Lake area," and to the extent SARA thus contends that its arguments under the general plan "apply whole sale [*sic*] to the Parkway Plan," the discussion above regarding SARA's failure to identify any substantial evidence in support of its argument under the general plan applies with equal force here.  Second, to the extent SARA offers arguments purportedly specific to the parkway plan, those arguments lack merit also because SARA fails to point to any substantial evidence in the record to support its argument.  Again, SARA points to what it views as "Folsom's intent for the project[, which] is to increase the volume of visitors to the Project area, so that Folsom can capture the economic benefit accrued to the adjacent historic district."  But this essentially amounts to nothing more than speculation that because the city wants the project to increase the number of visitors to the area, the project may in fact result in so much increased usage that it will effectively alter the appropriate land use designation of the project area.   But as we have said, speculation is not substantial evidence.  And in the absence of substantial evidence to support a fair argument, the city did not abuse its discretion in proceeding by way of a mitigated negative declaration, and the trial court did not err in denying SARA's writ petition.

10

## DISPOSITION

The judgment is affirmed.  The city shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)

/s/
Robie. J.

We concur:

/s/
Nicholson, Acting P. J.

/s/
Murray, J.